**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **RODRIGO TIXE-MAZA,**<br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, et al.,<br><br>Respondents. | Civil Action No. 1:26-cv-13382-WGY |

**PETITIONER'S EMERGENCY MOTION FOR STAY OF REMOVAL PENDING RESOLUTION OF HABEAS PETITION**

## INTRODUCTION

On August 26, 2026, an immigration judge affirmed a negative credible fear determination and returned Petitioner Rodrigo Tixe-Maza's case to the Department of Homeland Security "for removal." Ex. G. Two days later, on August 28, 2026, an immigration judge — conducting the bond hearing this Court ordered — denied bond. With no procedural barrier remaining, DHS may schedule and execute Petitioner's removal at any time. Petitioner therefore moves on an emergency basis for a stay of removal pending the resolution of this Court's habeas jurisdiction.

Removal from the United States would moot this habeas proceeding and cause irreparable harm that no future court order can remedy. This Court has already held that Petitioner's detention is governed by 8 U.S.C. § 1226(a) — a holding that necessarily calls into question the validity of the § 235(b) expedited removal order DHS now seeks to execute.

Respondents themselves conceded that § 1226(a) governs. Doc. 6 at 1. A stay is warranted to preserve this Court's jurisdiction while the constitutional and statutory challenges in this petition are fully resolved.

## BACKGROUND

Petitioner Rodrigo Tixe-Maza, a citizen of Ecuador (A# 240-819-518), was detained by ICE on July 17, 2026, during a compliance check at which he had voluntarily appeared, consistent with four years of unbroken compliance. He had been paroled under INA § 212(d)(5)(A) in June 2022 and had filed an affirmative asylum application (Form I-589) with USCIS on January 27, 2023, which USCIS receipted and actively adjudicated for over three years, including the grant of employment authorization. Ex. B.

On July 23, 2026, Petitioner filed the instant habeas petition challenging his detention as unlawful. On July 30, 2026, Respondents filed a two-page response conceding that § 1226(a) governs Petitioner's detention and that "the Court may resolve this Petition without further briefing or oral argument." Doc. 6 at 1.

Meanwhile, on July 24, 2026, USCIS Asylum Officer H. Ortiz Casco conducted a telephonic credible fear interview at Plymouth County H.O.C. On July 31, 2026, the asylum officer issued a negative credible fear determination. Ex. D at 1–2. As described below, that determination is procedurally and legally defective on the face of the administrative record. On August 26, 2026, an immigration judge affirmed the negative finding and returned the case to DHS for removal. Ex. G.

This Court issued its Order on August 18, 2026, finding that Petitioner is detained under § 1226(a), enjoining Respondents from treating him as detained under § 1225(b)(2), and

directing that a bond hearing be held within ten days with specific written findings on the record.

On August 26, 2026, Immigration Judge Julian Nierva affirmed the negative credible fear determination. Ex. G. That affirmance returned Petitioner's case to DHS "for removal." On August 28, 2026 — the same day as the court-ordered bond hearing — IJ Nierva denied bond. Petitioner is now detained with a purported "final order of removal" in place and no remaining administrative or immigration court proceedings.

## LEGAL STANDARD

A federal court has authority to stay removal pending resolution of a habeas petition. Nken v. Holder, 556 U.S. 418, 433–34 (2009). Courts consider four factors: (1) likelihood of success on the merits; (2) irreparable harm absent a stay; (3) harm to the opposing party; and (4) the public interest. Id. at 434. Where the government is the responding party, the balance-of-equities and public-interest inquiries merge. Id. at 435. All four factors strongly favor a stay here.

## ARGUMENT

### I. PETITIONER HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. Respondents Conceded — and This Court Held — That § 1226(a) Governs Petitioner's Detention.

Respondents have already conceded — in this Court — that Petitioner's detention is governed by § 1226(a). Doc. 6 at 1 ("Should the Court follow its reasoning in Velasco-

Luis and de Los Reyes Gonzalez, it would reach the same result here and order a bond hearing conducted in Immigration Court pursuant to 8 U.S.C. § 1226(a)."). This Court agreed. That concession is law of the case.

The § 235(b) expedited removal order Respondents now seek to execute is the product of proceedings this Court has found do not properly govern Petitioner's detention. Further, the August 28 bond hearing failed to comply with this Court's August 18 Order in multiple independent respects — grounds that Petitioner presents in detail in his contemporaneously filed motion for enforcement. Petitioner has already prevailed on the principal legal question in this habeas petition. His likelihood of success on his remaining claims is substantial.

**B. The Credible Fear Proceeding Should Never Have Been Initiated: DHS Had Already Committed Petitioner to § 240 Removal Proceedings.**

Petitioner's likelihood of success rests on an additional, independent ground: the § 235(b) proceedings that produced the "final order of removal" DHS now seeks to execute were never validly initiated or completed — and DHS had expressly committed Petitioner to a different track altogether. When Border Patrol encountered Petitioner in May 2022, it issued a Form I-860 (Notice and Order of Expedited Removal). The I-860 was not in Petitioner's possession when this habeas petition was filed; it came to light only when the asylum office attached it to the CFI record produced during the credible fear proceedings. But the ORDER OF REMOVAL UNDER SECTION 235(b)(1) — the portion of the I-860 that constitutes the actual removal order, which requires the signatures of the examining officer and a supervisor — was never signed or completed. Ex. D at 29–30. The

"Determination of Inadmissibility" section was signed by Border Patrol Agent Villarreal, but no removal order was entered. The following month — in June 2022 — DHS paroled Petitioner under INA § 212(d)(5)(A), Ex. H at 1–2, and issued an I-831 Disposition Record certifying that a Notice to Appear would be filed with the Boston Immigration Court, committing DHS to full § 240 removal proceedings before an immigration judge with the full panoply of procedural protections. Ex. H at 5. The chronology is dispositive. DHS did not simply leave the I-860 incomplete by accident — it came back the following month and affirmatively chose a different track. An unsigned expedited removal order followed weeks later by a written § 240 commitment is not an administrative oversight DHS can quietly revive four years later. It is a documented abandonment of the § 235(b) track in favor of the one DHS itself elected in writing.

DHS never completed that commitment. A Notice to Appear must be filed with the immigration court to vest § 240 jurisdiction. 8 C.F.R. § 1003.14(a). DHS served the I-831 but never filed the NTA. For the next four years, Petitioner lived in this country in reliance on that administrative choice: he filed an affirmative I-589 asylum application with USCIS in January 2023; USCIS receipted and adjudicated it for over three years, granting employment authorization. Ex. B. Petitioner complied with every ATD/GPS supervision condition without exception. Ex. F. When DHS detained him in July 2026, it did not place him in the § 240 proceedings it had chosen four years earlier — it initiated a credible fear interview, predicating those proceedings on an I-860 whose removal order had never been signed or entered. DHS cannot exploit its own unfinished administrative action — an unsigned removal order it abandoned through parole and the I-831 § 240 commitment — to reinvoke the summary § 235(b) track against a person who spent four years relying on

the administrative election DHS made in his case. The "final order of removal" that DHS now seeks to execute is the product of proceedings for which DHS lacked a valid predicate and to which it had already committed a different track for four years.

## C. The Credible Fear Determination Is Legally Defective on Its Face.

Even setting aside the threshold question of whether DHS could validly initiate § 235(b) proceedings in 2026, the credible fear determination itself is defective on the face of the administrative record. The Form I-870 (Record of Determination/Credible Fear Worksheet) — the core document of the credible fear adjudication — contains an internal contradiction that independently renders the determination a nullity: both Box 4.10 ("Credible fear of persecution established") and Box 4.12 ("Credible fear of persecution NOT established") are checked simultaneously. Ex. D at 9. A finding that is both positive and negative is no finding at all. A determination that is self-contradictory on the face of the controlling administrative form cannot constitute the predicate for an immigration court proceeding or a "final order of removal."

The I-870 also reflects a legal error in the nexus analysis that independently warrants relief. Box 4.1 — indicating the officer found Petitioner credible — is checked. Ex. D at 9. The interview notes in the administrative record confirm that Petitioner testified to fear of harm specifically because he is gay and because he is indigenous (Purua, a Kichwa-speaking people of Chimborazo Province, Ecuador). Ex. D at 11–21. Both sexual orientation and indigenous identity are recognized protected grounds under the INA. See Matter of C-G-T-, 28 I&N Dec. 740 (BIA 2023) (applicant cannot be required to conceal sexual orientation; fear of persecution for being gay implicates a protected particular social

group). Yet Box 4.9 — "No Nexus" — is checked, with no specific protected ground identified, and the written analysis dismissed Petitioner's account as a "crime of opportunity" and concluded his family was "not inclined to harm him on account of a protected ground" — without engaging with testimony directly connecting the feared harm to his sexual orientation and indigenous identity. An officer who finds a claimant credible and documents testimony tying feared harm to recognized protected grounds cannot check "No Nexus" without a reasoned explanation. The absence of any such explanation is a reviewable legal error. Petitioner has a substantial likelihood of prevailing on each of these independent grounds.

## II. PETITIONER WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

Removal from the United States is the archetypal irreparable harm in the habeas context. Nken, 556 U.S. at 435 ("It is not a 'close question' whether an alien's interest in the potential loss of his or her right to remain in this country is sufficient to establish 'some possible irreparable injury.")

The specific harm here is compounded by the procedural posture. The "final order of removal" at issue is the product of a credible fear proceeding that this Court has already, in substance, found was improperly applied to Petitioner — by holding that he is a § 1226(a) detainee, not a § 1225(b)(2) arriving alien subject to expedited removal. To allow DHS to execute that order while this habeas remains pending would permit the government to accomplish through executive removal the very result this Court has stayed through its injunction: treating Petitioner as though § 1225(b)(2) governs his case.

Petitioner also faces severe personal irreparable harm. He has resided in the United States for four years, has stable employment, has a U.S. citizen sponsor in Massachusetts, Ex. E, has maintained unbroken compliance with ICE supervision, Ex. F, and has a pending affirmative asylum application that reflects a documented fear of persecution on account of being gay and indigenous in Ecuador, Ex. B. Removal severs all of these ties and eliminates any possibility of relief in this proceeding.

## III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR A STAY.

The government faces no cognizable prejudice from a brief stay preserving the status quo during the pendency of this litigation. The government's legitimate interest is in executing lawful removal orders. It has no legitimate interest in executing a removal order whose legal basis this Court has already found improper, and whose relationship to this Court's August 18 Order is now directly before the Court.

The public interest strongly favors a stay. Federal courts have a fundamental interest in preserving their own jurisdiction and in ensuring that their orders are not mooted by executive action during pending proceedings. See United States v. United Mine Workers, 330 U.S. 258, 290 (1947). The public also has a substantial interest in ensuring that DHS is bound by its own administrative commitments. In 2022, DHS served Petitioner with an I-831 Disposition Record certifying that his Notice to Appear would be filed with the Boston Immigration Court, committing to regular § 240 removal proceedings. Ex. H at 5. Petitioner spent four years relying on that commitment. A stay preserves this Court's ability to resolve whether DHS may lawfully invoke the summary § 235(b) track against a person to whom it made that commitment.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court enter an order staying Petitioner's removal from the United States pending final resolution of this habeas petition, including any appeal therefrom. Given the risk that DHS may act to schedule removal at any time, Petitioner requests expedited consideration of this motion.

Respectfully submitted,

Rachel L. Rado, Esq.
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor
Boston, MA 02114
(617) 871-6030
rachel@rachelradolaw.com

*Counsel for Petitioner*
Dated: August 30, 2026

**VERIFICATION OF COUNSEL**

I, Rachel L. Rado, counsel for the Petitioner, certify that the factual allegations contained in the foregoing Motion and Attachments are based upon communications with Petitioner and records available to counsel, and are true and correct to the best of my knowledge, information, and belief. I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Rachel L. Rado, Esq.
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor
Boston, MA 02114
(617) 871-6030
Counsel for Petitioner

Dated: August 30, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of August, 2026, a true and correct copy of the foregoing Motion and Attachments was filed through the Court's CM/ECF system and will be served electronically upon all registered participants, and that a copy will be served upon Respondents in accordance with Rule 4 and the applicable local rules.

Respectfully submitted,

Rachel L. Rado, Esq.
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor
Boston, MA 02114
(617) 871-6030
Counsel for Petitioner

Dated: August 30, 2026